IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOVANA RISTEVSKI and VASKO RISTEVSKI | ) ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. 09 C 4874 |
| v. | ) ) |
| | ) Judge Norgle |
| S&P CARRIER, LTD., an Ontario, Canada Corporation, and GEORGE CRONKITE, | ) ) ) Magistrate Judge Cole |
| | ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Notwithstanding the ease with which people travel today, disputes inevitably continue to arise over where depositions should take place. The disputes are not limited to cries of distress from defendants, but can also involve claims by plaintiffs where they have been constrained in their choice of the forum. This case involves a defendant, Mr. Cronkite, who objects to being ordered to come to Chicago for his deposition. In his view, the lawyers in the case should be required to take the deposition in Burford, Canada, where he lives.

Mr. Cronkite is a former long-haul trucker whose vehicle, the complaint alleges, struck the vehicle in which Jovana Ristevski was a passenger, injuring her. The accident took place in Cook County, Illinois, which is where the plaintiffs filed suit. The defendants removed the case from the Cook County Circuit Court to this court on the basis of diversity jurisdiction, as both defendants, Mr. Cronkite, and S & P Carrier, Ltd., are Canadian citizens. The plaintiffs have noticed the deposition of Mr. Cronkite in Chicago. Mr. Cronkite has moved for a protective order requiring that the

deposition be held near his home in Burford, Ontario, so that he may avoid, as the defendants put it, "having to travel to a foreign land." (*Defendants' Reply Brief*, at 5).

A party can set the place for a deposition of an opposing party anywhere it wishes. Fed.R.Civ.P. 30(b); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, § 2112, at 73 (1994). Of course, the opposing party may move for a protective order to avoid "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed.R.Civ.P. 26(c). That party has the burden to show good cause. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994); *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D.Ill. 2007). Conclusory statements of hardship are not sufficient to carry this burden. *Jung*, 242 F.R.D. at 483; 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, § 2035, at 484 (1994). In the end, the court has substantial discretion to establish the time and place of depositions. 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, § 2112, at 524 (2010); *New Medium Technologies LLC v. Barco N.V.*, 242 F.R.D. 460, 466 (N.D. Ill. 2007).

Discretion denotes the absence of a hard and fast rule. *Langnes v. Green*, 282 U.S. 531, 541 (1931); *Rogers v. Loether*, 467 F.2d 1110, 1111-12 (7th Cir.1972)(Stevens, J.). Thus, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *United States. v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir.2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). Consequently, decisions may be found supporting almost any position and while a decision in a particular case may be helpful, it is seldom dispositive. An abuse of discretion occurs when no reasonable person could agree with the district court's decision. *United States v. Harris*, 531 F.3d 507, 514 (7th Cir.2008); *Roadway Exp., Inc. v.*

*U.S. Dept. of Labor*, 495 F.3d 477, 484-485 (7th Cir.2007); *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir.2001).

In support of their request that Mr. Cronkite be deposed in or near his home town, defendants point out that there is a general presumption that a defendant shall be deposed in the district where he resides. *Sharif v. International Development Group*, 2003 WL 21995166, *1 (N.D.Ill. 2003); *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001). The idea is that the plaintiff has brought the lawsuit and has chosen the forum, while the defendant is haled there involuntarily. *Fausto v. Credigy Services Corp.*, 251 F.R.D. 427, 429 (N.D.Cal. 2008); *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989). Where a party can demonstrate that "good cause" exists to excuse a deposition in the place where suit is pending, the deposition may proceed elsewhere. 8A C. Wright & Miller, §2112 at 535.

That often occurs where a plaintiff had little choice in selecting the forum. In this case, the plaintiffs reside in Indiana, but the accident occurred in Illinois and the defendants reside in Canada. They were constrained in their initial choice of forum by the long-arm jurisdiction rules of Indiana and Illinois. That choice was further diluted, at least to some extent, when the defendants removed the case to federal court, which, the venue rules being what they are, had to be in the Northern District of Illinois. 28 U.S.C. §1391(a). It is true, as the defendants say, that they had the right to remove the case to federal court, 28 U.S.C. §1441, but when they chose to exercise that right, they did wrest away the plaintiff's choice of where to litigate, even though it wasn't their idea to be sued and the case remained in Chicago. Accordingly, the general presumption in favor of a defendant being deposed in his home district loses some of its force. 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, § 2112, at 531 (2010); *Six West*, 203 F.R.D. at 107; *In re Livent,*

*Inc. Securities Litigation*, 2002 WL 31366416, *1 (S.D.N.Y. 2002); *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989).[1]

Where a defendant can demonstrate that good cause exists to excuse a deposition in the place where suit is pending, the plaintiff may be required to take the deposition in a different locale. Here, Mr. Cronkite's affidavit contends that good cause is established because it would be difficult for him to travel to Chicago. The affidavit states that Mr. Cronkite is 65 years old and has been retired since September 2007 (Cronkite Aff. ¶¶ 2,7), which was about four months after the accident. He explains that he injured his right shoulder eighteen years ago, and that the progression of this injury, as well as his age, occasioned his retirement fifteen year thereafter. (Cronkite Aff. ¶ 7). Mr. Cronkite states that the shoulder injury causes him pain on a daily basis and makes travel very difficult. (Cronkite Aff. ¶ 8). Based on this affidavit, the defendants argue that his having to travel to Chicago for his deposition would cause undue physical and financial hardship for Mr. Cronkite. They note that the driving distance from Burford, Ontario, to Chicago is 451 miles. (*Motion to Quash and for Protective Order*, ¶¶ 2, 6).

One cannot tell from the affidavit *what* the specific injury is, even though that would help to assess the claim of pain. There is no indication of the medical treatment that was given, and there is no claim that Mr. Cronkite takes pain medicine or is even under any medical care for his shoulder. Even a minor shoulder injury would probably make it very difficult to continue handling a big rig over long hauls, especially as one grows older. But one isolated car trip from Burford to Chicago is not a series of cross-country truck journeys. Perhaps it would be very uncomfortable to drive that

---

[1] The removal is not a significant factor, and even had the case been brought in the district court rather than the state court, the result would be the same.

far, perhaps not. We need not reach that question, for Toronto is only about 60 miles from Burford and it is an easy flight from there to Chicago. Getting to Toronto would not require a long drive, and Mr. Cronkite does not contend that there is no one that could drive him or no method of transportation, other than his driving, by which he could get to Toronto.

Here merely says in the most conclusory way, that his shoulder injury causes pain on a daily basis and makes travel "very difficult." He does not say that he does not travel nor does he say when and where he last traveled. A quick search on various travel websites demonstrates that it would take about an hour and forty-five minutes to get from Burford to Toronto. Even the defendants concede that the Toronto-Chicago flight is an easy trip. (*Defendants' Reply Brief*, at 4). Looking at it that way, it is not an undue physical hardship to require Mr. Cronkite to fly from Toronto to Chicago, and Mr. Cronkite's very conclusory affidavit does not support a claim of undue hardship. Nor does it support a claim of undue expense.

An important question in determining where to hold the examination is the matter of expense. But Mr. Cronkite does not contend that he would have to pay any of the costs or that they would not be borne by his former employer/co-defendant, S & P Carrier, Ltd. All we are told is that Mr. Cronkite retired three years ago and has not worked since. We know nothing about his financial situation. He may have saved a great deal over his working life and invested wisely. He may have a substantial pension. He may have inherited a great deal of money. Simply put, the fact that he hasn't worked in the three years following his retirement proves absolutely nothing. It certainly falls far short of establishing that a trip to Chicago would cause undue financial burden.

Not only is it likely that his former employer will absorb the costs of the deposition, but even if it did not, a review of travel websites reveals that, during the first week in May for example, a

5

round trip ticket between Toronto and Chicago would cost $287. The defendants allow that, generally, the cost of the flight is "modest." (*Defendants' Reply Brief*, at 5). Moreover, expense is relative. The defendants' attorneys are in Chicago. Hence, a deposition in Burford, or a nearby city, would involve trips, and perhaps accommodations, for the defendants' two attorneys, as well as the plaintiff's attorneys. It is obvious that would be more expensive than requiring the deposition of Mr. Cronkite to be held in Chicago. In short, the defendants have failed to carry their burden of establishing good cause for a protective order. Rather, the facts demonstrate that whatever presumptive preference may exist in favor of a defendant being deposed in his home district, it has been overcome here based on factors of cost, convenience, and litigation efficiency. Those factors militate in favor of holding the deposition in Chicago rather than in Burford, Canada. *Sharif*, 2003 WL 21995166, *1.

The cases the defendants rely on do not counsel a different result. (*Defendants' Reply Brief*, at 5). In *O'Sullivan v. Rivera*, 229 F.R.D. 187 (D.N.M. 2004), the defendant was a long-haul trucker who was still working, and the court noted that pulling him away from one of his runs in order to make a trip from Idaho to New Mexico for a deposition would cause him and his family financial hardship. For Mr. Cronkite, this is obviously not a consideration. The other case, *Mothersbaugh v. GTX, Inc.*, 1990 WL 47389 (D.Or. 1990), also involved a working truck driver. The opinion was three paragraphs, the first two of which discussed the facts. The final paragraph consists of five sentences in which the court announced the "general rule" that: "when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." *Id.*, at *1. The court concluded that under the facts before it, it would "rule based on this

6

principle of law." *Id.*

*Mothersbaugh*, like *Rivera*, is clearly distinguishable since the financial hardship to the individual defendant truck driver that would result from being required to take off from work does not exist here because Mr. Cronkite is retired. Moreover, "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). *See also Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J., concurring in part and dissenting in part)("'general observations'" suffer from the common flaw that they are not applied to the specific matter and "therefore they tend to be not only general, but vague and abstract."); *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.) ("General language does not decide particular cases, as Holmes liked to say."); *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 611 (7th Cir. 2006)("...one must always be wary about generalities in judicial opinions....").

The defendants' reliance on *Mothersbaugh* overlooks its facts even though the facts are outcome-determinative in these kinds of cases. Their reliance also puts out of view the highly discretionary nature of the decision that is implicated by motions for protective orders regarding the place of depositions. Properly understood, *Mothersbaugh* was simply a response to a discrete set of facts and an exercise of discretion in that factual context. *Mothersbaugh* did not articulate an inflexible rule. Nor did it pretend to abolish the discretion that case after case has stressed district courts have in these matters. And finally, *Mothersbaugh* did not suggest scrapping the multitude of factors that all cases have recognized as informing the discretionary decision of where a deposition should occur in place of a rule that a deposition *must* occur where a defendant lives. Neither *Mothersbaugh*, *Rivera*, nor any other case sets forth such an inflexible rule.

7

## CONCLUSION

The defendants' motion to quash and for protective order [#37] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/26/10